**SIGNED this 26 day of December, 2018.**



_____
**John T. Laney, III
United States Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy Case |
| | ) | |
| **DARLENE BOWERS**, | ) | No. 18-70224-JTL |
| | ) | |
| Debtor. | ) | Chapter 7 Proceeding |

| | | |
|---|---|---|
| **WALTER W. KELLEY**, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | |
| **OCWEN LOAN SERVICING, LLC** as agent | ) | No. 18-07006 |
| for Deutsche Bank National Trustee Company, | ) | |
| as Trustee for Soundview Home Loan | ) | |
| Trust 2006-OPT2, Asset-Backed Certificates, | ) | |
| Series 2006-OPT2, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this adversary proceeding, Walter Kelley, the Chapter 7 Trustee ("the Trustee"), seeks an order determining the enforceability of a security interest that encumbers the Debtor's real property in Thomas County, Georgia. (Compl., A.P. No. 1). The Trustee argues that, because he may claim the interest of a bona fide purchaser pursuant to 11 U.S.C. § 544(a)(3), his interest in the property is free and clear of the security deed currently held by Deutsche Bank National Trustee Company ("DBNT"). (Id.) The Defendant, a servicer for DBNT,[1] filed an answer disputing the Trustee's claim. (Answer, A.P. No. 7). The answer further sought a declaration that the security interest is enforceable or alternatively, for equitable recognition of the interest by subrogation or reinstatement. (Id.)

The parties filed cross-motions for summary judgment. (Pl.'s Mot. for Summ. J., A.P. No. 17; Def.'s Mot. for Summ. J., A.P. No. 28). The motions raised two issues. First, whether a hypothetical purchaser is deemed to have notice that, despite the recordation of two instruments canceling a security deed, a security interest encumbered the Debtor's real property. If not, the Court must address whether DBNT is entitled to an equitable recognition of its lien.

The Court heard the cross-summary judgment motions and, after the parties presented their arguments and the record in this case, the Court took the matter under advisement. Having carefully considered the issue before it, the Court concludes there is no issue of material fact and grants summary judgment in favor of the Plaintiff.[2]

I.    **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, states that a court may grant summary judgment "if the movant

---

[1] The Court will refer to OCWEN and DBNT collectively as "DBNT" in this opinion.

[2] The parties have consented to the Court's entry of a final order; therefore, the Court has authority to enter a final order in this dispute. See 28 U.S.C. §§ 157(b)(2)(K), (c)(2).

2

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making this determination, this Court must "resolve all reasonable doubts about the facts in [the non-moving party's] favor." *Info. Sys. & Network Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). Further, the Court must draw "all justifiable inferences" in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

An issue of fact is material if it affects the outcome of the case as identified by substantive law. *Anderson*, 477 U.S. at 248; *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996). Therefore, the Court will focus its analysis solely on factual contentions that are relevant and necessary to the outcome of the case. A genuine dispute exists if a reasonable fact finder could find in favor of the non-moving party based on the evidence. *Anderson*, 477 U.S. at 248. A genuine dispute means that more than "some metaphysical doubt [exists] as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Between DBNT's admissions in its Answer and the parties' statements and replies concerning material facts, the parties largely agree on the material facts. Of the disputed facts, they are either unsupported by the record [3] or are irrelevant or unnecessary to the outcome of this

---

[3] Specifically, two of the Trustee's denied assertions of fact pertain to the corporate relationship between H&R Block and Option One Mortgage. To support those assertions, the Trustee relies on statements made in two district court cases, *Tamayose v. Option One Mortg. Corp.* and *Drake v. Option One Mortg. Corp.* (respectively, No. 10-00185, 2010 U.S. Dist. LEXIS 126311 (D. Haw. Nov. 30, 2010) and No. 09-01450, 2010 U.S. Dist. LEXIS 147721 (C.D. Cal. 2010)).

Although a party may prove an issue is precluded by prior litigation, the prior courts must, inter alia, have made findings of fact. The *Tamayose* and *Drake* courts' statements were not findings of fact. (*Tamayose*, 2010 U.S. Dist. LEXIS 126311*1 (order entered on motion for summary judgment); *Drake*, 2010 U.S. Dist. LEXIS 147721 *3 (order entered on Rule 12(b)(6) motion to dismiss)). Therefore, the Trustee's citations to these cases alone do not support the facts asserted.

Further, in a motion for summary judgment, a party asserting a fact must cite to materials in the record that support the assertion. F.R.C.P. 56(c)(A). Other than the Trustee's citations to district court orders, there is nothing in the

case. As such, the Court finds the issues before it are legal in nature and the case is suited for summary judgment.

## II. FACTS IN THE RECORD

Prior to filing this case, the Debtor purchased real estate in Thomas County, Georgia. (Compl. ¶ 7, A.P. No. 1). In 2006, the Debtor granted Option One Mortgage ("Option One") a security deed, which was recorded in the Thomas County real estate records on March 1, 2006 ("the Security Deed"). (Id. ¶ 8). On August 4, 2008, a Satisfaction of Mortgage was recorded that referenced the Security Deed ("the 2008 Satisfaction"). (Id. ¶ 9). The 2008 Satisfaction stated that the Security Deed had been paid in full and that the undersigned was the present owner of the referenced security interest by virtue of assignment or devise from Option One. (Id. Ex. B). The document, however, was not signed by agents of Option One; instead, the undersigned signed as assistant secretaries of H&R Block Bank ("H&R Block"). (Id.) On August 11, 2009—a little over one-year later, another Satisfaction of Mortgage was recorded that again referenced the Security Deed ("the 2009 Satisfaction"). (Id. ¶ 10). Like the prior instrument, the 2009 Satisfaction stated the Security Deed had been paid in full and that the undersigned was the present holder of the Security Deed. And again, the document was signed by assistant secretaries of H&R Block (the 2008 Satisfaction and 2009 Satisfaction will be referenced collectively as "the Satisfactions"). (Id. Ex. C).

The Thomas County title records do not reflect H&R Block ever had a recorded interest in the Debtor's property. (Def.'s Stmnt. of Uncontested Facts ¶ 12). DBNT asserts that the Satisfactions were recorded in error. (Id. ¶ 16). The Trustee disputes this but does not cite to any document in record refuting this statement. DBNT, on the other hand, makes ample citations to

---

record to support the Trustee's assertions regarding the corporate relationship between H&R Block and Option One Mortgage. Therefore, the Court finds no basis to consider the Trustee's assertion. *See Id.* (c)(3).

support this statement. It points to the Debtor's affidavit, which stated the Debtor understood the security deed remained outstanding and that she continued to make payments on the note. DBNT also points to an affidavit from an officer at OCWEN who reviewed the assignments of the note and saw no indication that H&R Block ever held an interest. Further, the record shows that when H&R Block executed a cancelation of a mortgage originated by Option One concerning another property owned by the Debtor in Thomas County, it filed an "affidavit of missing assignment" prior to filing the cancelation. (Id. ¶ 15).

On February 28, 2018, the Debtor filed a petition seeking relief under Chapter 7 of the Bankruptcy Code. (Pet., Bankr. Doc. No. 1). The Trustee was appointed and sought to sell the Debtor's interest in the Thomas County property free and clear of the Security Deed pursuant to 11 U.S.C. § 363(f)(1). (Mot. To Sell Property, Bankr. Doc. No. 12). The Trustee initiated this adversary proceeding to determine the secured status of the Security Deed.

After the Trustee filed this adversary proceeding, the Defendant recorded an instrument assigning Sand Canyon Corporation f/k/a Option One Mortgage Corporation's interest in the Security deed to DBNT. (Def.'s Stmnt. of Uncontested Facts ¶ 19).

### III. CONCLUSIONS OF LAW

#### A. Constructive Notice of the Security Deed

A bankruptcy trustee, pursuant to 11 U.S.C. § 544(a)(3), may take for the bankruptcy estate the interest a bona fide purchaser would acquire. Here, the Trustee argues a bona fide purchaser could perfect its interest in the Debtor's property free and clear of the Security Deed because the Satisfactions purported to release the security interest. DBNT, on the other hand, argues a purchaser would have had constructive notice of Option One's outstanding security

5

interest because the Satisfactions did not comply with Georgia law and were signed by a party without a recorded interest in the property.

Resolving this issue requires first discussing the standards for determining whether a bona fide purchaser would have had notice of a superior interest in property. Considering these standards, the Court must then address whether the undisputed facts in this case lead the Court to conclude one party is entitled to a judgment as a matter of law.

### 1. Constructive Notice Under Georgia Law

Although the Trustee asserts the interest of a bona fide purchaser through the Bankruptcy Code, Georgia law governs the interest a bona fide purchaser acquires. *See Bank of Am., N.A. v. Adams (In re Adams)*, 583 B.R. 541, 553 (Bankr. N.D. Ga. 2018) (citing *SunTrust Bank, N.A. v. Macky (In re MCormick)*, 669 F.3d 177, 180 (4th Cir. 2012)). Under Georgia law, a bona fide purchaser takes an interest in property that is superior to every interest of which the purchaser had "neither actual nor constructive notice[.]" *Deutsche Bank Nat'l Trust Co. v. JP Morgan Chase Bank, N.A.*, 307 Ga. App. 307, 309 (2010) [herein "*DBNT v. JP Morgan*"] (quoting *Roland v. Glass*, 305 Ga. App. 217, 218 (2010)) (internal citations omitted).

In an action under 11 U.S.C. § 544(a)(3), the Trustee's actual knowledge of a superior interest is disregarded. *Id.* § 554(a). Therefore, the relevant inquiry in this case is whether a bona fide purchaser would have had constructive knowledge of the outstanding security interest. Under Georgia law, the chain of title, as reflected in the real estate records, is the starting point for this determination. *See Va. Highland Civic Ass'n, Inc. v. Paces Props. Inc.*, 250 Ga. App. 72, 74 (2001). A purchaser is deemed to have reviewed the applicable land title records concerning the property and to have "notice of every matter which appears in his deed, and of any matters which appear on the face of any deed, decree, or other instrument forming an essential link in the

6

chain of instruments through which he deraigns title[.]" *Henson v. Bridges*, 218 Ga. 6, 9 (1962); *see also VATACS Group v. HomeSide Lending*, 276 Ga. App. 386, 391 (2005). "Chain of title includes all recorded instruments pertaining to the property that are executed by an entity holding a recorded interest in the property at the time of the execution of the instrument." *VATACS Group*, 276 Ga. App. at 391.

The duty to inquire arises under "any circumstance which would place a man of ordinary prudence fully upon his guard[.]" *Montgomery v. Barrow*, 286 Ga. 896, 897 (2010) (quoting *Price v. Watts*, 223 Ga. 805, 806 (1967)). Where the chain of title is "regular on its face" and the instruments are "duly recorded," no duty to inquire arises and a bona fide purchaser may take free of an unperfected interest. *DBNT v. JP Morgan*, 307 Ga. App. at 309; *see also Pettie v. Brannon (In re Brannon)*, 548 B.R. 417, 421 (Bankr. N.D. Ga. 2018) (holding a trustee could take an interest superior to the debtor's former spouse because neither the divorce decree nor any other instrument conveying title from the debtor was recorded).

If a hypothetical purchaser would have inquired further, the purchaser is deemed to have notice of everything an inquiry would have revealed. *Whiten v. Murray,* 267 Ga. App. 417, 421 (2004); *see also* O.C.G.A. § 23-1-17 ("Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led.") Here, there is no genuine dispute that the Debtor was aware of the existing security interest and continued to make regular payments on the note. Further, the record shows H&R Block Bank never held a recorded interest in the Security Deed. Given this evidence, it is clear that, had a purchaser inquired about the Satisfactions with the Debtor, H&R Block Bank, or Option One, the purchaser would have discovered they were recorded in error. Ultimately then, the decisive issue in this case is whether a purchaser would have inquired.

The parties' competing arguments for granting summary judgment and their arguments against granting the opposing party's motion can be separated into two broad categories: (i) arguments concerning the chain of title and (ii) arguments regarding whether the instruments comply with Georgia law. Each is addressed in separate subsections below.

### 2. Chain of Title Issues

Concerning the chain of title, DBNT makes two arguments to support its motion for summary judgment. First, DBNT argues that, because the Satisfactions were executed by a party without a recorded interest, the instruments are outside the chain of title and, thus, a bona fide purchaser cannot rely on them. To support its argument DBNT cites *Stearns Bank, N.A. v. Rent-A-Tent, Inc. (In re Rent A Tent, Inc.)*. 468 B.R. 442, 457 (Bankr. N.D. Ga. 2012) (stating the chain of title "includes all recorded instruments pertaining to the property that are executed by an entity holding a recorded interest in the property at the time of the execution of the instrument.") (citing *Suntrust Bank v. Equity Bank, S.S.B.*, 312 Ga. App. 644, 719 (2011) and *VATACS Group*, 276 Ga. App. at 386). As the *Rent A Tent* Court stated, Georgia law directs courts to disregard a wild deed—a deed executed by a party without a recorded interest—when determining whether the recorded instruments would have led a bona fide purchaser to inquire. *Palmer v. Forrest, Mackey & Associates, Inc.*, 251 Ga. 304, 307-08 (1983).

While recognizing this precedent, the Court notes an important distinction between those cases and the issue here. In *Palmer*, for example, the wild deed was a security deed executed by a grantor without a recorded interest in the property. *Id.* at 304-05. The court held that, "because the lender's security deed was not in the chain of title, it is as if it were not recorded for the purpose of giving constrictive notice." *Id.* at 307-08. In coming to this conclusion, the court cited

8

various Georgia recording statutes, including O.C.G.A. § 44-2-1.[4] *Id.* at 308. These statues require the recordation of a deed to be effective against a bona fide purchaser.

Here, the instrument in question is not a deed but a cancelation of a security interest. Georgia's recording statutes impose different requirements for these instruments. O.C.G.A. § 44-14-64(f) permits the recordation of a cancelation by a party without a recorded assignment of the security deed under certain circumstances.[5] If the Court were to interpret Georgia law to disregard the effect of a recorded cancelation merely because it was filed by a party without a recorded assignment, it would disregard O.C.G.A. § 44-14-64(f)'s recognition of the enforceability of such a cancelation. The Court will not make an interpretation that contravenes an explicit provision of O.C.G.A. *See Chan v. Ellis*, 296 Ga. 838, 839 (2015) ("When we read the statutory text, we must presume that the General Assembly meant what it said and said what it meant[.]") (quoting *Deal v. Coleman*, 294 Ga. 170, 172 (2013)) (internal quotations omitted).

DBNT's second argument is that, even if the Satisfactions were within the chain of title, a purchaser would have inquired whether H&R Block was authorized to file the Satisfactions because the bank did not hold a recorded interest in the property. This argument fails because,

---

[4] O.C.G.A. § 44-2-1 provides:

> Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land is located. A deed may be recorded at any time; but a prior unrecorded deed loses its priority over a subsequent recorded deed from the same vendor when the purchaser takes such deed without notice of the existence of the prior deed.

[5] O.C.G.A. § 44-14-64(f) provides:

> Where the holder of the right to service or supervise the servicing of the transferred deed to secure debt and the indebtedness therein secured is a financial institution or lender as described in subsection (d) of this Code section, it shall have the same rights, responsibilities, and obligations to act in all matters concerning the servicing, administration, and cancellation of the deed and indebtedness as to third parties as if no such transfer had taken place.

Additionally, DBNT argues that the Trustee failed to present evidence that the requisite circumstances existed when the Satisfactions were recorded. That argument is addressed in the following subsection.

9

under Georgia law, a bona fide purchaser may rely on an instrument regardless of whether the instrument was authorized by a party in interest. *See DBNT v. JP Morgan*, 307 Ga. App. at 311 (holding a deed canceling a security interest that was signed by unauthorized individuals did not create constructive notice of the outstanding security interest because "there was no reason to suspect that [cancelation instrument] might be defective in some manner or that there might be a problem in the chain of title resulting from the [cancelation instrument]"). Constructive notice only arises when the chain of title is inconsistent. *See Id.*; *see also Henderson v. Suntrust Bank N.W. Ga. (In re Henderson)*, 284 B.R. 515 (Bankr. N.D. Ga. 2002) (finding constructive notice of an outstanding security interest where, after a cancelation was filed in error, the security deed holder filed a notice of modification and an affidavit stating the release was filed in error).

*Household Fin. Servs. v. Neighbors (In re Neighbors)*, a case from the Bankruptcy Court for the Southern District of Georgia, illustrates how a chain-of-title issue can create constructive notice of an outstanding security interest. No. 06-6008, 2006 Bankr. LEXIS 4653 *2-3 (Bankr. S.D. Ga. Oct. 12, 2006). There, the mortgage originator recorded security deeds perfecting senior and junior mortgages. The originator assigned the senior security deed to Household Financial Services ("HFS") and assigned the junior security deed to Household Reality Corporation ("HRC"). The recorded assignment of the junior mortgage, however, mistakenly referenced the deed book and page of the senior mortgage. On the same day the assignment to HRC was recorded, HRC also recorded a quit claim deed canceling its interest in the senior security deed. After the owner of the encumbered property filed a chapter 7 bankruptcy petition, the trustee sought to avoid the senior security interest by arguing a bona fide purchaser would have concluded the quit claim deed canceled the senior mortgage. *Id.*

10

DBNT cites *In re Neighbors* for the proposition that, if a party without a recorded interest in a property files an instrument canceling a security deed, a purchaser is under a duty to inquire whether the cancelation is effective. (Def.'s Mot. for Summ. J., Ap. Doc. No. 28-1 at pg. 10 (citing *In re Neighbors*, 2006 Bankr. LEXIS 4653 *11)). This Court, however, does not believe *In re Neighbors* supports this proposition. Inconsistencies in the chain of title—not that HRC did not have a recorded interest—led the *In re Neighbors* Court to find a purchaser would have had constructive notice of HFS's security interest. The court noted that a review of the recorded documents would have discovered "the uncertainty concerning the status of both HFS and HRC's interest in the Debtor's property." *In re Neighbors*, 2006 Bankr. LEXIS 4653 *9. Further, the court noted HRC's cancelation "of an instrument assigned to HFS [was] sufficient to constitute notice" of an existing security interest. *Id.* at *9-10. Thus, the court concluded a purchaser would have inquired because the recorded documents assigned one security deed to two parties and only one of the parties canceled the security deed. That HFS had "no recorded interest in the property" was not dispositive.

In this case, the chain of title is consistent. While it is true that H&R Block executed the Satisfactions without a prior recorded assignment, the Satisfactions stated H&R Block was the holder of the Security Deed by virtue of an assignment. Nothing recorded in real estate records is inconsistent with this statement. From the Security Deed's recording until after the Debtor filed the bankruptcy case—nearly twelve years—no recorded instruments contradicted the statements within the Satisfactions.

Pointing to the affidavit of missing assignment filed in another property's title records, DBNT also argues that H&R Block's general course-of-business when an assignment to the bank was not previously recorded was to file an affidavit before a cancelation. That H&R Block did

11

not file one here, DBNT argues, indicates the Satisfactions were recorded in error. The Court finds this evidence immaterial to the issue before the Court. First, one example does not demonstrate H&R Block had a general policy of filing an affidavit under these circumstances. Secondly, even if H&R Block had a policy of filing an affidavit, there is no evidence that a hypothetical purchaser would have been aware of that policy and would have questioned a cancelation without a prior recorded affidavit. As previously discussed, Georgia law does not require an assignee to file an affidavit of missing assignment before canceling the original security deed. The Court will not impose requirements beyond those made by Georgia's General Assembly.

Lastly, DBNT argues that, because H&R Block recorded two satisfactions approximately one year apart, a hypothetical purchaser would have inquired whether the instruments were filed in error. It also seems a fact finder could make the opposite interpretation: that filing two instruments with different persons executing the documents would assure a purchaser that the cancelation was genuine. Being at the summary judgment stage, the Court should not weigh evidence. But given other undisputed facts in this case, the Court can conclude any weight attributable to this fact would be *de minus*. Even viewed in the light most favorable to DBNT, no reasonable fact finder could conclude that because H&R Block executed and recorded two consistent instruments it may have filed them in error, especially when the title records did not indicate any issue in the nearly twelve years following the Satisfactions' recording.

Moving to the merits of the Trustee's motion, the parties make many of the same arguments. There is no reason to re-discuss these arguments. The Court's reasoning for denying DBNT's motion for summary judgment applies to the Trustee's motion and leads the Court to conclude the Trustee is entitled to a judgment as a matter of law. It is, however, important to

address DBNT's argument that, if the Court were to rule in favor of the Trustee, any mortgagor could file a fraudulent cancelation in the title records and this Court's ruling would effectively release the security interest. This overstates and misunderstands the issue. First, any fraudulent instrument is only effective as to a purchaser without actual or constructive notice of a superior interest. A mortgagor cannot simply file a cancelation to remove the security interest encumbering her property.

Secondly, Georgia's recording statutes were written to protect the interest of a bona fide purchaser. *Hardin v. City Wide Wrecker Serv.*, 232 Ga. App. 617, 618 (1998). Considering this, a court's analysis must be based on the purchaser's perspective. *See DBNT v. JP Morgan*, 307 Ga. App. at 307. Simply put, a court must determine what a purchaser would conclude upon reviewing the title records, regardless of the actual interests in the property. If the face of the title records show some legal defect, the purchaser cannot rely on them. If the records are inconsistent, the purchaser should inquirer further. But if the title defect is hidden from the purchaser and the records do not reveal any facial deficiency, Georgia law protects the purchaser.

This is the case here. Although the evidence suggests that H&R Block was not authorized to cancel the Security Deed and that the security interest remained on the property, Georgia's recording statutes protect the interests of bona fide purchasers. The Satisfactions had no facial defects. They stated H&R Block was the assignee of the Option One mortgage. Given the instruments in the chain of title and the contents of those documents, there is nothing that would have "excited the attention" of a hypothetical purchaser. A purchaser reviewing those title records would have no reason to suspect the Security Deed remained effective despite the Satisfactions.

3. **Compliance with Georgia Law**

Large portions of the parties' briefs are spent arguing Georgia law regarding the enforceability of assignments and cancelation of mortgages. DBNT notes that the assignment used the form provided in O.C.G.A. § 44-14-67(c), which applies where "the original [security deed] has been lost, stolen, or otherwise mislaid." The original security deed in this case is not mislaid; it is in the servicer's possession. Further, although O.C.G.A. § 44-14-64(d) states an assignment does not have to be recorded, DBNT notes the subsection only applies when the parties to the assignment make specific agreements regarding the assignment's terms and possession of the original deed. The record in this case does not show H&R Block had an agreement with Option One or that it had possession of the original deed.

Ultimately, however, compliance with these statutes is not an issue in this case. The issue before this Court is whether a hypothetical purchaser would have accepted the Satisfactions given the circumstances of their execution. Again, the inquiry is from the perspective of a hypothetical third-party purchaser.

While there is no binding precedent, at least two Georgia bankruptcy courts have concluded that, if a cancelation uses the form provided by O.C.G.A. § 44-14-67(c), a hypothetical purchaser can accept the cancelation even without knowing whether the original deed was lost, stolen, or mislaid. *See Rogers v. M&I Bank FSB (In re Morgan)*, 449 B.R. 821, 825 (Bankr. N.D. Ga. 2010) (holding a hypothetical purchaser could accept a cancelation, although it did not state the status of the original deed, because the presentation of a form provided by Georgia law "evidences a sworn statement that the original security deed to be cancelled is unavailable for marking and recording, and that the cancellation instrument is to be accepted for such purpose"); *see also*, *Gordon v. Wells Fargo Bank, NA (In re Ingram)*, 2013 Bankr. LEXIS 2614 *7 (Bankr. N.D. Ga. April 5, 2013) (citing *In re Morgan*, 449 B.R. at 825).

14

The reasoning in these cases is persuasive here. The Court sees no reason why a hypothetical purchaser would second-guess a cancelation using a form provided by Georgia law merely because the form did not contain a statement regarding the whereabouts of the original deed.

Likewise, a hypothetical purchaser would not have known that there was no enforceable assignment between Option One and H&R Block. It is true that the record in this case reflects that H&R Block was never an assignee of the deed to secure debt. But, again, the relevant perspective is that of a hypothetical purchaser. Nothing on the face of the Satisfactions indicates H&R Block was not assigned the Security Deed. Rather, the instruments expressly state that H&R Block was the owner of the security interest by virtue of an assignment. A purchaser would have concluded that H&R Block acquired the deed through an unrecorded assignment; such a transfer is permitted by Georgia law.

### B. Equitable Reinstatement of the Security Deed

Having determined a bona fide purchaser could take an interest in the debtor's property free from DBNT's interest, the Court must address DBNT's counterclaim for equitable reinstatement of the Security Deed. Georgia law recognizes that a "cancellation obtained by fraud or mistake without payment may itself be canceled by a court of equity." *Decatur Fed. Sav. & Loan v. Gibson*, 268 Ga. 362, 364 (1997). As an act of equity, a court must consider the equities of granting such relief. *See Davis v. Johnson*, 241 Ga. 436, 438 (1978). In particular, O.C.G.A. § 23-1-20 provides that "[a] bona fide purchaser for value, and without notice of an equity, will not be interfered with by a court of equity." *See also R.W. Holdco v. SCI/RW Holdco*, 250 Ga. App. 414, 419 (2001).

Here, there is no dispute that the Debtor continued to make regular payments to DBNT and a fact-finder could reasonably find the Satisfactions were recorded in error. But by holding

the Trustee had no notice of DBNT's interest in the property, Georgia law directs the Court to dismiss DBNT's claim for equitable reinstatement. The Bankruptcy Code gives the Trustee the powers of a bona fide purchaser and, thus, the protections provided by Georgia law extend to the Trustee as a matter of law.

### IV.     CONCLUSION

In this case, the Trustee seeks an order determining the secured status of DBNT in relation to real property purchased by the Debtor. The Trustee, pursuant to 11 U.S.C. § 544(a)(3), may take for the estate the interest of a hypothetical bona fide purchaser. Here, the real estate records show Option One recorded a security deed on the property. Subsequently, H&R Block filed an instrument in the title records stating it was the assignee of the Security Deed and that the deed was canceled. H&R Block filed a similar instrument nearly one year later. There were no indications that the title records were deficient or incorrect. Georgia law encourages a purchaser to rely on such documents. Therefore, a bona fide purchaser would not have notice of Option One's continued security interest.

[END OF DOCUMENT]